Mott v. Purcell.

*Lackland & Wilson* for appellant.

*T. F. McDearmon* for respondent.

---

MOTT *et al.*, Appellants, v. PURCELL *et al.*

98 247
124 84

1. **Parent and Child.** A parent can give his minor children their time.

2. ———: FRAUD. The evidence in a case examined and *held* the defendant children had purchased, and, by their industry and economy, paid for the land in controversy and that, therefore, the same was not liable for the debts of their father.

*Appeal from New Madrid Circuit Court.*—HON. J. D. FOSTER, Judge.

AFFIRMED.

*Marshall Arnold* for appellants.

The testimony in this cause cannot be reconciled with the *bona fides* of the purchase by the Purcell boys of the lands in controversy. The purchase was made by Louis Purcell, paid for by him with his own means, and in the deed, his co-defendants and children were made grantees for the express purpose of defeating and defrauding the creditors and heirs of the estates of Franklin McCloud and Robert B. Hill, he being, in both instances, obligated for the penalties of the two bonds of the respective administrators of said estates.

*Wilson Cramer* for respondents.

BLACK, J.—The plaintiffs in this case are John A. Mott and the heirs of Samuel T. Davis. The principal defendants are the sons of Louis Purcell. Mott and Davis purchased the five hundred and odd acres of land now in suit at a sale under an execution against Louis Purcell. The claim is that Louis Purcell purchased the land, paid for it from his own means, and had it conveyed to his sons to defraud creditors, and the prayer of the petition is that the title to the land be vested in the plaintiffs.

On the fourteenth of May, 1869, the persons known in the record as the Toney heirs conveyed to Henry, James, William and Bishop Purcell five-sevenths of the land in suit for the consideration of $5,125. These grantees are the sons of Louis Purcell, and the deed to them was recorded in 1870. Subsequently and in a suit for partition between the Purcell boys and the persons owning the other two-sevenths, the Purcell boys became the

purchasers of the two-sevenths at the sum of $2,028. The deed to them bears date March 27, 1873. These are the deeds which it is claimed were made to the Purcell boys to defraud creditors of Louis Purcell.

Louis Purcell was the surety of one Maulsby on his bond as administrator of McCloud. Maulsby was removed, and Davis was appointed administrator of the McCloud estate. Maulsby's settlement in the McCloud estate, made in 1866, showed an indebtedness to the estate of $296.23. In August, 1869, Davis, as administrator *de bonis non*, sued Maulsby and Louis Purcell, and such proceedings were had in the circuit and in this court that he recovered a judgment for the above-named amount in 1879. The land in question was sold on an execution issued upon this judgment and Mott and Davis became the purchasers at one hundred and sixty-five dollars, the amount of the costs accrued in that case.

The evidence shows that Louis Purcell resided in New Madrid county in 1867; that he then sold his farm and personal property for about five thousand dollars, and moved to Arkansas. He returned to this state in 1868 or 1869. On the part of the plaintiffs it is shown that in 1869, when the five-sevenths of the land were purchased from the Toney heirs, the Purcell boys had no money or property whatever. Henry Purcell was then twenty-one and the other boys were of the ages of seventeen, fourteen and six years. The father, mother and boys all lived on a farm rented by Louis Purcell in 1869, and in 1870 they moved to the farm now in question. Some declarations of Louis Purcell put in evidence tend to show that he purchased and paid for the land, and some of them tend to show that he did not pay for and never claimed the land as his own property. On the other hand it is shown beyond all doubt that, at the time the deed was made from the Toney heirs to the Purcell boys, Henry Purcell, the oldest, made a mortgage on the land to secure two notes of one thousand dollars each,

payable to the Toney heirs. These notes were given as a part of the purchase price of the land. They were signed by Louis Purcell and an uncle of Henry. The deed to the boys and the mortgage to the Toney heirs to secure the two thousand dollars were made at the same time and were prepared by Mott, one of the plaintiffs in this case. At the same time Henry Purcell gave his father a note for $3,125, payable in installments, namely, in 1870, 1871 and 1872. This note is produced and has endorsed thereon three payments, one of twelve hundred dollars in 1870, one of twenty-five hundred bushels of corn at fifty cents per bushel in 1871, and a third is a receipt for the balance due on the note. That these payments were made by the boys in money and corn is shown by evidence of the boys, which is corroborated by that of other persons. The evidence of the Purcells is that Henry wanted to buy the Toney farm and requested a loan from his father for that purpose ; that the father refused to make him the loan unless he took his other minor brothers in as equal purchasers ; that Henry agreed to and did make the purchase for himself and brothers ; that the father then loaned him $3,125 to make the cash payment, and that the boys paid the father the money thus borrowed, and also paid the two notes which were secured by the mortgage executed by Henry.

If the defendants' case stood alone on these statements of interested parties, we should doubt the merits of the defense. But there is a vast amount of specific evidence which shows that these boys raised on the rented farm in 1869 a large crop of corn which they sold at about one dollar per bushel, and which yielded them over three thousand dollars. They also got rents in corn from the farm now in question for that year. During the three subsequent years they farmed on a large scale and sold their corn at good prices. They paid the rents for the farm which they cultivated in 1869, and they employed and paid for such help as they

had during these years. They managed the farm wholly, and the father had nothing to do with matters of that kind.

There is but one conclusion at which an unprejudiced mind can arrive in this case, and that is this, that these boys purchased and by their industry and economy paid for this land. It is true some of them were minors, but it seems the father gave them their time, and this he had a right to do. It is true that the boys for the years 1869, 1870 and 1871, used their father's teams in cultivating the land. This circumstance is not to be overlooked, but it cannot override the other circumstances so clearly established. The case made out by the plaintiffs is completely overthrown by the evidence produced by the defendants. As to the purchase of the two-sevenths interest, the case is still stronger for the defendants, and we deem it useless to detail the further evidence in respect of that purchase.

A point of some interest is made, and that is whether this suit is barred by the statute of limitations ; but since the defendants are not fraudulent grantees, we do not stop to consider that question.

It seems William Purcell, one of the boys, died before the plaintiffs purchased at the execution sale. His interest descended to his father, mother and brothers, so that Louis Purcell did have a small interest which passed to the plaintiffs. As to this interest the court awarded the plaintiffs a writ of restitution, and of this they complain. Defendants make no complaint and we do not see that the plaintiffs have any just cause of complaint. The judgment gives them all they are entitled to have, and it is affirmed. SHERWOOD, J., absent; the other judges concur.